**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN THE MATTER OF | No. CV-22-01481-PHX-SPL |
| Ralph Crudup, Jr.,<br>Renee Latrail Crudup, | BK No.  2:21-bk-03498-EPB |
| Debtors. | **ORDER** |
| | |
| Michael McDanel, et al., | |
| Appellants, | |
| vs. | |
| Ralph Crudup, Jr., et al., | |
| Appellees. | |

Before the Court is Appellants Michael McDanel ("Mr. McDanel")[1] and MGM Wise Choice, Inc.'s ("MGM" or, together with Mr. McDanel, "Appellants") appeal from the *Minute Entry/Order for Matter Taken Under Advisement* issued by the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Court") on August 4, 2022. (Docs. 7-2 at 2–5 & 8-1 at 10–13). The parties have fully briefed the issues. (Docs. 7, 8, & 9). For the following reasons, the Court reverses the Bankruptcy Court's Order and

---

[1] The docket incorrectly spells Appellant Michael McDanel's name as "McDaniel." For purposes of this order, the Court will use the spelling used in the parties' briefing and in the Bankruptcy Court documents filed with the Court.

remands the case for further proceedings.[2]

## I.      **BACKGROUND**[3]

In or around May 2020, Mr. McDanel and Debtor Ralph Crudup ("Mr. Crudup" or, together with his wife Rene Crudup, "Debtors") entered into a Partnership Agreement and formed Pathway to HOPE Homes, LLC ("PHH"). (Doc. 8-1 at 43). PHH is an Arizona company which operates group homes for developmentally disabled individuals. (Doc. 8 at 5). Mr. Crudup and MGM (owned by Mr. McDanel) each own a fifty-percent membership interest in PHH. (*Id.*).

In December 2020, Mr. McDanel and MGM filed a lawsuit against Mr. and Mrs. Crudup in Arizona state court, alleging breach of their Partnership Agreement and of a related promissory note. (Doc. 8-1 at 46–48). Among other relief, Mr. McDanel and MGM sought an order declaring Mr. Crudup disassociated and expelled from PHH. (*Id.* at 48). In February 2021, the Crudups filed their Answer and several counterclaims, including a request for judicial dissolution and winding up the affairs of PHH. (*Id.* at 52–63).

On May 6, 2021, Debtors filed a voluntary bankruptcy petition in Bankruptcy Court (the "Bankruptcy Proceeding"). (Doc. 7 at 10). On June 23, 2021, Mr. McDanel and MGM removed the parties' state-court action to the Bankruptcy Court, where it was designated as an adversary proceeding (the "Adversary Proceeding"). (Doc. 8-1 at 156–60; *see also* Doc. 8-1 at 16 (parties' Joint Pretrial Statement noting that state court matter was removed to Bankruptcy Court "as an adversary proceeding in the Crudups' bankruptcy")). After removal, Mr. McDanel and MGM amended their pleadings and added a request for judicial

---

[2] Because it would not assist in resolution of the instant issues, the Court finds this appeal suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

[3] This Background section is based on the factual background provided in Appellants' Opening Brief (Doc. 7), Debtors' Response Brief (Doc. 8), and Appellants' "Motion for Leave to Appeal" (Doc. 1 at 12–18), which was filed with the Bankruptcy Court prior to this action being appealed to this Court.

2

dissolution and the winding up of PHH, pursuant to A.R.S. § 29-3701. (Doc. 8 at 5).

In September 2021, the Bankruptcy Court held two separate hearings with the parties during which it became clear that they were not capable of carrying on PHH affairs in accordance with the operating agreement and that they were deadlocked in the management of the company. (Doc. 8-1 at 12). On October 29, 2021, the parties filed a joint pre-trial statement in which they submitted various stipulated and disputed issues of law and fact. Under Section 4 of the Statement (titled "Agreed Issues of Law"), the parties agreed as follows:

> The Parties agree that PHH should be dissolved.
>
> The Parties have agreed to allow a business broker to attempt to sell PHH to a third party. The Parties have agreed that the business broker will have 90 days in which to attempt to find a buyer.
>
> The Parties agree that if a buyer is not found within that time, that the Parties will submit a stipulation to the Court for an order judicially dissolving PHH, winding up its business operations, and liquidating its assets.
>
> This agreement will therefore resolve Plaintiffs' Count Five of their Amended and Supplemental Complaint, and Defendants' Count Four of their Counterclaim.

(Docs. 7-9 at 6 & 8-1 at 19). In December 2021, a bench trial was held. On January 12, 2022, the Bankruptcy Court "entered a final order awarding damages to Appellants, and 'denying all other pending claims for relief.'" (Doc. 7 at 11). In other words, the Bankruptcy Court accepted the parties' agreement resolving their claims for judicial dissolution and dismissed those claims (Count Five of Appellants' Complaint and Count Four of Debtors' Counterclaim). On May 27, 2022, after issues related to attorneys' fees were resolved, the Bankruptcy Court entered final judgment. (Doc. 9 at 7).

The parties engaged a business broker and permitted PHH to be listed. (Doc. 7 at 11). Apparently, the business broker failed to find a buyer. On April 14, 2022, Debtors filed a "Plan of Reorganization" in the Bankruptcy Proceeding. (Doc. 7-11 at 2). That same day—rather than submitting a stipulation to the Bankruptcy Court for judicial dissolution,

winding up, and liquidation of assets, as the parties agreed to do in the Joint Pre-Trial Statement—Debtors filed an *Amended Plan, Amended Schedules, and a Motion for Sale of Property Free and Clear of Liens* ("Sale Motion"). (Doc. 7-13 at 2). In the Sale Motion, Debtors asked the Bankruptcy Court to authorize the sale of 100% of the membership interests in PHH, arguing that the Bankruptcy Court had authority to force the sale of non-debtor MGM's 50% membership interest under 11 U.S.C. §§ 105 and 363(b) and (f). (*Id.*). Appellants filed an Objection to Debtors' Sale Motion, arguing that the Bankruptcy Code—specifically §§ 105 and 363(b) and (f)—did not authorize the Bankruptcy Court to force the sale of MGM's 50% membership interest in PHH because such membership interest was not part of the bankruptcy estate and was therefore non-debtor property. (Doc. 7-14 at 2–9). Appellants argued that the relief requested by Debtors' Sale Motion—the forced sale of MGM's non-debtor property—could only be obtained by filing an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001(7). (*Id.* at 3, n.1).

On July 6, 2022, the parties argued the Sale Motion before the Bankruptcy Court. (Doc. 7-15 at 2–5). On August 4, 2022, the Bankruptcy Court issued its ruling. (Doc. 7-2 at 2–5). The Bankruptcy Court recognized that MGM's membership interest was not property of the bankruptcy estate but *declined* to resolve the legal question of whether §§ 105 and 363 authorized it to force the sale of a non-debtor's property interest. (*Id.* at 2–3). The Bankruptcy Court reasoned that Debtors' request for a forced sale did not arise by virtue of Debtors' bankruptcy, but rather from "each party's request and subsequent agreement to dissolve PHH." (*Id.* at 3). The Bankruptcy Court referred to the already-dismissed Adversary Proceeding, noting that "[b]oth parties requested judicial dissolution of PHH pursuant to [A.R.S.] § 29-3701."[4] (*Id.*). The Bankruptcy Court noted that § 29-3701 permitted the dissolution of an LLC where "[i]t is not reasonably practicable to carry

---

[4] Specifically, the Bankruptcy Court was referring to the parties' respective judicial dissolution claims, *i.e.*, Count Five of Appellants' Complaint and Count Four of Debtors' counterclaim. These claims had already been dismissed pursuant to the Court's entry of final judgment in the Adversary Proceeding.

on the company's activities and affairs" or where "[t]he members or managers are deadlocked in the management of the company." (*Id.* (quoting A.R.S. § 29-3701)). The Bankruptcy Court then recounted its finding in the Adversary Proceeding that the parties were "deadlocked and unable to operate PHH without the assistance of the Subchapter V Trustee and this Court." (*Id.* at 4). The Bankruptcy Court also recounted the parties' agreement in the Joint Pre-Trial Statement. (*Id.*). Referring to the agreement as a stipulation, the Bankruptcy Court noted that Appellants' objection to the forced sale of PHH was "directly contrary to this stipulation." (*Id.*). The Bankruptcy Court granted the Sale Motion, purportedly enforcing the parties' mutual desire for dissolution in the Adversary Proceeding and their agreement in the Joint Pre-Trial Statement. (*Id.* at 5).

On August 18, 2022, Appellants timely appealed the Bankruptcy Court's order on the Sale Motion. (Doc. 7-3 at 2–3). Appellants argue that the Bankruptcy Court lacked authority to forcibly sell MGM's non-debtor membership interest and misinterpreted the parties' Joint Pre-Trial Statement agreement in granting the Sale Motion. (Doc. 7 at 13). Appellants request that this Court reverse the Bankruptcy Court's order and remand for further proceedings. (*Id.* at 21). Debtors argue that the Bankruptcy Court had authority to dissolve PHH, including the authority to force the sale of Appellants' non-debtor membership interest, and that any misinterpretation of the parties' Joint Pre-Trial Statement agreement is irrelevant because the Bankruptcy Court was not bound by the agreement. (Doc. 8 at 7–9).

**II.**     **STANDARDS OF REVIEW**

Under 28 U.S.C. § 158(a)(1), the Court has jurisdiction over appeals from "final judgments, orders, and decrees" of bankruptcy judges.[5] The Court reviews the bankruptcy

---

[5] "The test for finality in bankruptcy typically asks two questions: (1) whether the bankruptcy court's order fully and finally determined the discrete issue or issues it addressed; and (2) whether it "resolves and seriously affects substantive rights." *In re Liu*, 611 B.R. 864, 870 (9th Cir. BAP 2020). Here, the parties agree that the Order at issue on this appeal satisfies the finality test. (*See* Doc. 7 at 9 (Appellants asserting that the Order "fully and finally determined a discrete issue" and "clearly affected [substantive] rights");

court's conclusions of law *de novo* and its findings of fact for clear error. *Deck v. Tramiel*, 617 F.3d 1102, 1109 (9th Cir. 2010); *Christensen v. Tucson Ests., Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990). The Court must accept the bankruptcy court's findings of fact unless the Court "is left with the definite and firm conviction that a mistake has been committed." *Greene v. Savage*, 583 F.3d 614, 618 (9th Cir. 2009). The Court reviews the evidence in the light most favorable to the prevailing party. *Lozier v. Auto Owners Ins. Co.*, 951 F.2d 251, 253 (9th Cir. 1991).

## III.   <u>DISCUSSION</u>

The Court finds that reversal of the Bankruptcy Court's August 4, 2022 Order is appropriate. In granting Debtors' Sale Motion, the Bankruptcy Court relied primarily on the parties' requests and its own findings during the Adversary Proceeding. Specifically, the Bankruptcy Court's Order referred to the parties' respective claims for judicial dissolution of PHH, its own factual finding that the parties were deadlocked and unable to carry out the affairs of the company, and the parties' agreement as set forth in their Joint Pre-Trial Statement. The problem, however, is that any order forcing the sale of PHH should have been entered during or at the conclusion of the Adversary Proceeding, in resolution of the parties' judicial dissolution claims. As it played out, the Bankruptcy Court's August 4, 2022 Order came months *after* the Adversary Proceeding—and, in particular, the parties' claims for judicial dissolution—had been finally determined.

The Court's final judgment in the Adversary Proceeding denied the parties' claims for judicial dissolution, (*see* Doc. 7-10 at 4), presumably based on the parties' Joint Pre-Trial Statement agreement which expressly stated that it "resolve[d] Plaintiffs' Count Five of their Amended and Supplemental Complaint, and Defendants' Count Four of their Counterclaim." (Docs. 7-9 at 6 & 8-1 at 19). Although the parties apparently share the view that their agreement in the Joint Pre-Trial Statement was *not* a binding stipulation—in part because it was not expressly approved as a stipulation by the Bankruptcy Court (*see* Doc.

_____

Doc. 8 at 4 (Debtors stating that they are "satisfied" with Appellants' jurisdictional statements)).

8 at 9)—the Bankruptcy Court nonetheless treated it as such by finding that "[t]he parties agree that their operation of PHH is no longer viable, and that PHH shall be sold or dissolved" and subsequently denying the parties' judicial dissolution claims in line with the agreement. (Doc. 7-10 at 3–4). Moreover, the Bankruptcy Court repeatedly refers to the agreement as a stipulation in the August 4, 2022 Order. (*See* Doc. 7-2 at 4–5). Thus, considering that the Bankruptcy Court *was* acting pursuant to a stipulation when it dismissed the parties' judicial dissolution claims, the parties and the Bankruptcy Court were to enforce that stipulation according to its terms. The Court finds that the Bankruptcy Court failed to do so by ordering the sale of Appellants' non-debtor membership interest.

Although this Court typically defers to a lower court's interpretation of its own orders, "[s]tipulations by parties are contracts and a lower court's interpretation of a contract's language is subject to *de novo* review." *Orius Corp. v. Qwest Corp.*, 373 B.R. 555, 566 (N.D. Ill. 2007) (internal citations omitted); *see also In re Bataa/Kierland LLC*, 496 B.R. 183, 188 (D. Ariz. 2013) (citing *Starrag v. Maersk, Inc.*, 486 F.3d 607, 611 (9th Cir. 2007)) ("The interpretation of a contract in this case is governed by Arizona law, and is reviewed *de novo*."); *Parsons v. Ryan*, 912 F.3d 486, 495 (9th Cir. 2018) ("We review *de novo* the district court's interpretation of a stipulation of settlement."). Here, the parties' stipulation was clear. First, they agreed "to allow a business broker to attempt to sell PHH to a third party" and that the broker would have "90 days in which to attempt to find a buyer." (Docs. 7-9 at 6 & 8-1 at 19). Next, if no buyer was found, the parties agreed to "submit a stipulation to the Court for an order judicially dissolving PHH, winding up its business operations, and liquidating its assets." (*Id.*). Finally, the parties agreed that this would resolve their judicial dissolution claims. (*Id.*). At least initially, the parties complied with the agreement by engaging a business broker and permitting PHH to be listed. However, Debtors appear to have broken the agreement when—after no buyer was found within 90 days—they unilaterally filed the Sale Motion rather than joining with Appellants to submit a stipulation seeking dissolution, winding up, and liquidation. In granting the Sale Motion, the Bankruptcy Court overlooked Debtors' failure to comply with the

1   stipulation. More importantly, the Bankruptcy Court itself failed to honor the stipulation
2   when it ordered the sale of PHH rather than ordering its dissolution, winding up of business
3   operations, and liquidation of assets.

4   The Bankruptcy Court supported its decision by asserting that ordering a sale of
5   PHH was equivalent to ordering the company's dissolution, winding up, and liquidation:

6   > Further, McDanel's continued insistence on "liquidation" fails
7   > to recognize that liquidation may include a sale or is often
8   > synonymous with a sale. Dissolution necessarily broadens the
9   > net to allow the sale of both members' interests, as opposed to
    > the more limited relief allowed by 11 U.S.C. § 363(f)(5) of the
    > sale of the estate's interest in PHH.

10  (Doc. 7-2 at 4). The Court is unpersuaded. The Bankruptcy Court failed to support this
11  contention—that a judicially forced sale is equivalent to dissolution, winding up, and
12  liquidation—with any legal authority. Debtors' Response also fails to offer any legal
13  support. (*See* Doc. 8 at 8 (merely repeating Bankruptcy Court's position)).

14  Even aside from the absence of supporting legal authority, the Court notes that the
15  equivalence makes little practical sense in this case. If PHH is sold at auction, the company
16  continues as a going concern. As Appellants put it, "PHH will not be dissolved, but
17  continue as a legal entity; [] PHH's business will not be wound up, but continued; and []
18  PHH's assets will remain with the company and be sold as part of the sale of the
19  membership interests." (Doc. 7 at 17). Put simply, a court-ordered sale is not what the
20  parties agreed to in the Joint Pre-Trial Statement. If it *was*, the first half of the stipulation
21  would be rendered superfluous and rather redundant, for there is little purpose in allowing
22  a business broker 90 days to sell the company to a third party if the parties intended that
23  the Bankruptcy Court would ultimately order the sale of the company to a third party
24  anyway. This point is underscored by Appellants' explanation of the context surrounding
25  the parties' stipulation. (*See id.* at 18). Appellants first note that *both* parties had asked the
26  Bankruptcy Court in their pleadings for the judicial dissolution and winding up of PHH.[6]

27  ---

28  [6] "Debtors, for instance, alleged in their Counterclaim that it is 'not reasonably
    practicable to carry on the business [of PHH],' and that 'dissolution and winding up the

(*Id.*). Appellants then explain that:

> In the context of the parties' underlying claims, it is clear that both viewed the ultimate resolution of PHH as being to truly dissolve and wind up the business of PHH. They agreed to market the business temporarily in order to confirm that no interested third-party buyers could purchase the business and provide a benefit to the bankruptcy estate and the creditors. Once a lack of interested third-party buyers was confirmed, however, if the Court was to enforce the parties' stipulation, it could only do so by ordering the winding up of PHH as a going concern.

(*Id.*). Having fully reviewed the Joint Pre-Trial Statement and all other documents filed in this matter, the Court agrees with Appellants' interpretation of the stipulation and finds that the Bankruptcy Court failed to rule on Debtors' Sale Motion in accordance with the resolution that the parties reached—and that the Bankruptcy Court accepted—as it relates to their judicial dissolution claims.

Debtors argue that Arizona law—specifically, A.R.S. § 29-3701—provided the Bankruptcy Court with authority to order the sale of MGM's interest. (Doc. 8 at 8). As noted above, the Bankruptcy Court referenced this provision in its August 4, 2022 Order. (Doc. 7-2 at 3). Subsection A of § 29-3701 provides that an LLC "is dissolved, and its activities and affairs must be wound up" whenever, among other things, "[i]t is not reasonably practicable to carry on the company's activities and affairs in conformity with the articles of organization and the operating agreement" or when "[t]he members or managers are deadlocked in the management of the company and . . . the activities and affairs of the company cannot be conducted." A.R.S. § 29-3701(A)(4)(b)–(c). Subsection B adds that "[i]n a proceeding under subsection A of this section, the court may order a remedy other than dissolution." A.R.S. § 29-3701(B). Appellants argue that Debtors

---

affairs of PHH is in the best interest of it and its members.' Appellants, similarly, alleged that 'it is appropriate to dissolve PHH, as it is no longer practicable for the parties to carry on business together, Mr. Crudup and MGM are deadlocked in the management of PHH, and Mr. Crudup has persistently and willfully breached the Operating Agreement,' and they therefore requested 'an order dissolving PHH and ordering its winding up.'" (Doc. 7 at 18 (citing Doc. 7-8 at 2–21)).

waived this argument by not raising it below. (Doc. 9 at 8). Typically, Appellants would be correct. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (quotations and citation omitted) ("[A]n issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it."). However, in this case, the Bankruptcy Court's reliance on § 29-3701 in its Order makes the statute worth considering here.

Although § 29-3701 may offer an avenue for the Bankruptcy Court's authority to order the sale of PHH, the opportunity for exercise of such authority was during the Adversary Proceeding, not on Debtors' Sale Motion. By the time the Bankruptcy Court ruled on Debtors' Sale Motion, the Bankruptcy Court had already resolved the issue of judicial dissolution by accepting the parties' stipulation and entering a final judgment dismissing their respective claims for judicial dissolution. The Bankruptcy Court may very well have been correct that Debtors' request for a sale "[did] not arise by virtue of Debtors' bankruptcy, [but rather] from each party's request and subsequent agreement to dissolve PHH." (Doc. 7-2 at 3). Likewise, the Court accepts the Bankruptcy Court's factual finding that the parties were deadlocked and unable to carry out the affairs of the company. (*Id.* at 4). However, the Court cannot accept the Bankruptcy Court's assertion of § 29-3701 authority to judicially dissolve PHH—by way of a forced sale—because it had already entered a final judgment *denying* the parties' claims for judicial dissolution.

Finally, given that the Bankruptcy Court declined to resolve whether §§ 105 and 363 authorized it to force the sale of non-debtor property (*see* Doc. 7-2 at 3)—and because Debtors do not raise the issue on this appeal (*see generally* Doc. 8)—this Court does not address whether the Bankruptcy Code otherwise authorized the Bankruptcy Court's action.

In sum, the Court finds that the Bankruptcy Court misinterpreted the parties' stipulation and otherwise overstepped its authority in ordering the sale of MGM's non-debtor membership interest on Debtors' Motion. During the Adversary Proceeding, the parties asserted claims for judicial dissolution. The Bankruptcy Court found that dissolution was likely appropriate, given the parties' deadlock in managing the company.

However, before the Bankruptcy Court could grant relief in the form of judicial dissolution, the parties' Joint Pre-Trial Statement expressly informed the Bankruptcy Court that the parties had resolved the issue themselves: they would first try to sell PHH through a business broker and, if that failed, they would return to the Bankruptcy Court with a stipulation for dissolution, winding up, and liquidation. The Bankruptcy Court treated this agreement as a stipulation and dismissed the judicial dissolution claims. The parties initially followed their agreement by engaging a business broker and permitting PHH to be sold. When the business broker failed to find a buyer within 90 days, however, Debtors broke from the parties' agreement. Instead of filing a stipulation for dissolution, winding up, and liquidation—which would have resulted in *complete* dissolution and the end of PHH's existence as a company—Debtors unilaterally filed the Sale Motion, requesting that the Bankruptcy Court force the sale of PHH at auction. The Bankruptcy Court, however, had already issued a final judgment on such a request for relief by accepting the parties' stipulation, denying the parties' judicial dissolution claims, and terminating the Adversary Proceeding. Any authority the Bankruptcy Court would have had to force a sale as a resolution to the parties' requests for judicial dissolution—for example, pursuant § 29-3701—no longer existed. By nonetheless granting Debtors' request for a forced sale, the Bankruptcy Court failed to honor the parties' stipulation and effectively reopened Debtors' judicial dissolution claim which it had already dismissed.

## IV.   **CONCLUSION**

Importantly, the Court does not make any finding with respect to the Bankruptcy Court's ultimate authority on this issue. Rather, the Court simply finds that the sale of PHH should be resolved through adversary proceedings and not by motion, particularly because it involves non-debtor interests. *See In re Boni*, 240 B.R. 381, 385–86 (9th Cir. BAP 1999) (discussing differences between motion and adversary proceeding); *see also In re Lyons*, 995 F.2d 923, 924 (9th Cir. 1993) (finding that Chapter 7 trustee could obtain § 363(h) authority to sell estate's interest in real property as well as interest of non-debtor co-owners *only* through adversary proceeding and not by motion). To be sure, such an Adversary

Proceeding *did* exist in this case, at least at one point. However, the Bankruptcy Court terminated that Adversary Proceeding without ordering a sale of PHH and instead denied the parties' claims for judicial dissolution altogether in light of the parties' stipulation to dissolve, wind up, and liquidate the company if the business broker failed to sell it. The Court finds that, by later granting Debtors' Sale Motion and ordering the sale of PHH including Appellants' non-debtor membership interest, the Bankruptcy Court failed to conform with its own final judgment in the Adversary Proceeding by holding up the parties' stipulation.

Accordingly,

**IT IS ORDERED** that the August 4, 2022 Order and Judgment of the United States Bankruptcy Court is **reversed**. This matter is **remanded** to the United States Bankruptcy Court for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **enter judgment accordingly** and **terminate** this case.

Dated this 14th day of April, 2023.

Honorable Steven P. Logan
United States District Judge